UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LISA M. TREVINO,<br>(Social Security No. XXX-XX-6011),<br><br>                    Plaintiff,<br><br>          v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of<br>the Social Security Administration,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)          1:08-cv-820-WGH-RLY<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM  DECISION AND ORDER

### I.  Statement of the Case

Plaintiff, Lisa Trevino, seeks judicial review of the final decision of the agency, which found her not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") or Social Security Income ("SSI") under the Social Security Act ("the Act").  42 U.S.C. §§ 416(i), 423(d), 1381; 20 C.F.R. § 404.1520(f).  This United States Magistrate Judge has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).[1]

Plaintiff applied for DIB, and also SSI, on October 18, 2005, alleging disability since November 30, 2004.  (R. 13).  The agency denied Plaintiff's

---

[1]The parties filed Consents to Magistrate Judge jurisdiction (Docket Nos. 5, 13) and an Order of Reference was entered by District Judge Richard L. Young on September 5, 2008.  (Docket No. 17).

application both initially and on reconsideration.  (R. 31-32).  Plaintiff appeared and testified at a hearing before Administrative Law Judge Ann Rybolt ("ALJ") on January 28, 2008.  (R. 279-351).  Plaintiff was represented by an attorney; also testifying was a medical expert, a vocational expert, and Plaintiff's sister.  (R. 279).  On February 26, 2008, the ALJ issued her opinion finding that Plaintiff was not disabled because she retained the residual functional capacity ("RFC") to perform a significant number of jobs in the regional economy.  (R. 13-28).  The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner.  (R. 4-6).  20 C.F.R. §§ 404.955(a), 404.981.  Plaintiff then filed a Complaint on June 17, 2008, seeking judicial review of the ALJ's decision.

## II.  Statement of the Facts

### A.  Vocational Profile

Plaintiff was 27 years old at the time of the ALJ's decision and had a high school education.  (R. 26).  Her past relevant work experience was that of a kitchen helper and a fast food worker; these jobs were light or medium unskilled jobs.  (R. 26).

### B.  Medical Evidence

#### 1.  Plaintiff's Mental Impairment

On November 22, 1989, Plaintiff was administered a special education evaluation while at Wilbur Wright Elementary School.  (R. 202, 204-07).  She was in the third grade.  (R. 205).  It was noted that this evaluation was being

performed because Plaintiff's achievement scores were generally commensurate with measured ability level, which is in the borderline mildly mentally handicapped range.  (R. 202).  Testing, including the Wechsler Intelligence Scale for Children-Revised, indicated that Plaintiff had a Verbal I.Q. Score of 75, Performance I.Q. Score of 69, and a Full Scale I.Q. Score of 70.  (R. 206).  Plaintiff also had an Adaptive Behavior Quotient of 89.  (R. 206).  It was noted that "[i]nformation available through the adaptive behavior inventory indicates that Lisa is socially appropriate and able to interact positively with others."  (R. 207). Furthermore, the findings revealed that Plaintiff:  (1) was functioning intellectually in the borderline mildly mentally handicapped range; (2) was considerably below grade placement in reading and spelling; and (3) was more successful in math and was at grade level.  (R. 206-07).

In April 1991, Plaintiff again underwent a school special education evaluation.  (R. 212-18).  Plaintiff was an 11-year-old in the fourth grade at Greenstreet Elementary School.  (R. 214).  Plaintiff was in mainstream classes for history, science, math, and language at the fourth grade level.  (R. 212).  The Wechsler Intelligence Scale for Children-Revised indicated that Plaintiff had a Verbal I.Q. Score of 74, Performance I.Q. Score of 77, and a Full Scale I.Q. Score of 74.  (R. 216).  A nonverbal Leiter International Performance Scale was performed which revealed that Plaintiff had a mental age of nine years and six months and an I.Q. of 86, which placed her in the low average range of

intellectual functioning.  (R. 216).  Plaintiff was performing math at the beginning fifth grade level and was reading at the third to fourth grade level.  (R. 216).

On September 2, 1994, Plaintiff was administered a school special education evaluation.  (R. 223-29).  Plaintiff attended Parkview Junior High School and was a 14-year-old in the eighth grade.  (R. 223).  Plaintiff was "described as a motivated student with good work habits who displays strength in her math skills and who possesses adequate spelling and written expression skills."  (R. 223).  The Wechsler Intelligence Scale for Children-Third Edition indicated that Plaintiff had a Verbal I.Q. Score of 80, Performance I.Q. Score of 86, and a Full Scale I.Q. Score of 81.  (R. 223).  Plaintiff's I.Q. scores placed her "overall cognitive functioning within the low average range at approximately the 10th percentile in comparison with chronological age peers."  (R. 224).  It was noted that she displayed considerable strength in her high average ability to size up, interpret, and logically sequence social situations presented pictorially.  (R. 224).  Plaintiff's reading skills and comprehension were at the sixth grade level. (R. 225).

Plaintiff was again evaluated in December 1996.  (R. 230-39).  She was a 16-year-old tenth grader at New Castle Chrysler High School.  (R. 230).  She indicated that she enjoyed shopping and reading and that she hoped to train as a nurse after high school.  (R. 230).  The Wechsler Intelligence Scale for Children-Third Edition indicated that Plaintiff had a Verbal I.Q. Score of 79,  Performance I.Q. Score of 73, and a Full Scale I.Q. Score of 74.  (R. 231).  It was indicated that

her scores reflected that she was in the borderline cognitive functioning range.
(R. 232).

On June 25, 2007, Plaintiff was seen by Glenn Davidson, Jr., Ph.D., for a
psychological evaluation for Social Security.  (R. 161-64).  Plaintiff indicated that
she is not working "because of my health," specifying that her back and leg hurt
"all the time."  (R. 161).  She also reported that she is diabetic, but not taking any
medicines because of lack of funds.  She also complained of stress.

Plaintiff was in special education classes because she had problems with
reading and comprehension.  She graduated in 1999.  She did have some
problems in school with fighting and suspensions, but was never removed from
home.  (R. 161-62).  Plaintiff reported that she worked for a number of years as
kitchen help in a nursing home, as well as in the gas station; she has never
married and has no children.  (R. 162).  She has always lived at home with her
mother because she does not like to be alone.

Plaintiff's speech was soft, brief, often with one word responses, but was
intelligible at 100%.  She complained of occasional difficulty thinking, and she
seemed to be fair in terms of ability to maintain attention and concentration.  (R.
162).

Plaintiff was able to perform simple mental arithmetic in all four functions,
although she was slow and used her fingers.  Plaintiff reported that she will help
out with some household chores such as laundry, dishes, and vacuuming.  She

will on occasion go to the grocery store, but does not like to go shopping.  (R. 163).

Plaintiff underwent a mental status examination, and Dr. Davidson opined that the results from the Wechsler may reflect an underestimate of Plaintiff's actual abilities.  The results show a Full Scale I.Q. of 67, with Verbal and Performance I.Q. of 70 and 69, respectively.  These fall into the range of borderline to mild mental handicap, although again they were viewed by Dr. Davidson as being under-representative of Plaintiff's true ability.  (R. 163).

Plaintiff was also administered the MMPI-2.  (R. 163).  Dr. Davidson opined that the resulting profile was invalid in light of a large number of responses to infrequent items and excessive acquiescence to items.

Further, Dr. Davidson opined that Plaintiff's intelligence scores show borderline intellectual ability, but it was felt that they were under-representative in light of her current behavior and prior testings.  (R. 164).  He noted that Plaintiff had no history of mental health involvement.  He reported a GAF score of 70.  (R. 164).

### 2.  Plaintiff's Physical Impairments

On April 15, 2004, Plaintiff presented at the Henry County Hospital emergency room.  (R. 130, 135).  She was in a motor vehicle accident and complained of lower back pain and cervical neck pain.  It was noted that she had been seen by Dr. Dewiller and Dr. Roling for chronic back pain.  An exam revealed loss of lordosis which is often seen with muscle spasm or strain.  She

displayed 5/5 strength in all extremities.  (R. 130).  Disc spaces, facet joints, and neural foramina all appeared normal.  (R. 135).

Plaintiff again went to the Henry County Hospital emergency room on November 25, 2004.  (R. 128-29).  She complained that her leg had been swollen for two days.  She had throbbing pain from her left knee radiating to her left foot, but she did not recall any injury.  It was observed that her foot was tender to palpation at arch of foot and at dorsum of metatarsals, and she was diagnosed with metatarsalgia.  A left foot x-ray interpreted by William D. Shidal, M.D., revealed slight spurring upon the os calcis at the insertion site of the plantar tendons.  (R. 129).

On June 28, 2005, Plaintiff was seen at the Henry County Hospital emergency room.  (R. 125, 127).  She complained of a left ankle injury; she apparently had fallen over a coffee table.  She feels sharp pain in her left ankle and also warmth and edema.  It hurts more with ambulation.  An exam revealed bruising from ankle to mid shin anteriorly and swelling to the mid shin as well as tenderness.  (R. 125).  She was diagnosed with a left ankle sprain.  X-rays revealed no evidence of fracture or dislocation.  (R. 127).

On October 16, 2005, Plaintiff was seen at the Henry County Hospital emergency room with complaints of a headache.  (R. 122).  She had dizziness and nausea.

On November 19, 2005, Plaintiff admitted herself to the Henry County Hospital emergency room.  (R. 117, 119).  Her complaint was back pain; it was

indicated that she was unable to afford medications.  She complained of severe pain after tripping over an object.  (R. 117).  An exam revealed bilateral back pain in region of T10-L5, no radiculopathy, and muscle pain due to spasms. She was diagnosed with acute thoraco-lumbar strain with pain.  Plaintiff also noted that she was unable to stand upright, and she stated that her "[l]egs feel like they are giving out on me."  (R. 119).

On January 18, 2006, Wail Bakdash, M.D., provided a consultative evaluation for Social Security.  (R. 113-14).  Plaintiff's complaints included:  (1) lower back pain occurring since 2005 (she suggested that she is able to walk one block and climb one flight of stairs); (2) type II diabetes (she was not taking any medication); (3) hypothyroidism (she could not afford the medication); and (4) obesity and leg swelling.  (R. 113).  She smokes one pack of cigarettes a day. Upon examination, her height was 62 inches and her weight was 294 pounds. Her straight leg raising is 20 degrees bilaterally; there was no evidence of edema cyanosis or clubbing; her gait and posture were normal; she was able to stand on heel and toes without difficulty; she had no evidence of swollen joints; her strength was 5/5; and her deep tendon reflexes were normal.  (R. 114).  Dr. Bakdash opined that Plaintiff was "able to grasp, lift, carry, manipulate objects in both hands and perform repeated movements with both feet."  She was also "able to bend over without restriction and squat normally."  He concluded that Plaintiff is able to "sit, stand, and walk normally."  (R. 114).

On September 17, 2006, Plaintiff again admitted herself to the Henry County Hospital emergency room.  (R. 192-93, 195).  Plaintiff complained that her "back gave out."  It was stiff and painful.  (R. 192).  She also complained of right leg pain.  (R. 193).  On examination, Plaintiff's low back was tender to palpation.  (R. 193).  Plaintiff was prescribed Vicodin.  (R. 195).

On January 15, 2007, Plaintiff presented at the Ball Memorial Hospital emergency room.  (R. 178-80, 183, 185).  Again she complained of low back pain.  (R. 178).  She stated that she had a history of chronic neck pain/back pain which was exacerbated by movement.  (R. 179).  On examination, Plaintiff had evidenced back muscle spasms; straight leg raising revealed pain at 70 degrees in both legs.  (R. 180).  Her diagnosis was chronic low back pain.  She was prescribed Voltaren and Flexeril.  (R. 180).

A thyroid study on June 4, 2007, revealed normal results.  (R. 169).

On June 19, 2007, Plaintiff admitted herself to the Henry County Hospital emergency room.  (R. 259-62, 264).  She complained of constant achy low back pain that is worse with movement.  (R. 259).  She was prescribed Percocet and Valium.  (R. 260).

### III.  Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); see also *Perkins v.*

*Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997).  This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399-400.  Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner.  *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999).  Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

## IV.  Standard for Disability

In order to qualify for disability benefits under the Act, Plaintiff must establish that she suffers from a "disability" as defined by the Act.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  The Social Security regulations set out a sequential five step test the ALJ is to perform in order to determine whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520. The ALJ must consider whether the claimant:  (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform her past relevant

-10-

work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.* The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

## V.  The ALJ's Decision

The ALJ concluded that Plaintiff was insured for DIB through September 30, 2010, and Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 15-16). The ALJ continued by finding that, in accordance with 20 C.F.R. § 404.1520, Plaintiff had three severe impairments:  borderline intellectual functioning; diabetes type II; and obesity. (R. 16). The ALJ concluded that these impairments did not meet or substantially equal any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17). Additionally, the ALJ opined that Plaintiff's allegations regarding the extent of her limitations were not fully credible. (R. 22). Consequently, the ALJ concluded that Plaintiff retained the RFC for light work with the following restrictions:  lifting and carrying up to ten pounds frequently and 20 pounds occasionally; standing/ walking six hours in an eight-hour workday with the option to sit for 15 minutes after each hour; sitting for six hours; occasional climbing of stairs and ramps, balancing, stooping, kneeling, crouching, and crawling; no climbing of ladders/ropes/scaffolding; no exposure to extreme heat or cold, or work involving heights or moving machinery; and only simple or repetitive tasks. (R. 21). The ALJ, therefore, opined that Plaintiff did not retain the RFC to perform her past

work.  (R. 26).  The ALJ determined that Plaintiff still could perform a significant number of jobs, including 5,280 assembler, 4,419 inspector, and 2,085 general office clerk jobs.  (R. 27).  The ALJ concluded by finding that Plaintiff was not under a disability.  (*Id.*)

## VI.  Issues

The court concludes that Plaintiff has essentially raised three issues.  The issues raised by Plaintiff are as follows:

1.  Whether Plaintiff's impairment met Listing 12.05C.

2.  Whether the ALJ's credibility determination failed to comply with SSR 96-7p.

3.  Whether the ALJ conducted an improper RFC determination.

**Issue 1:  Whether Plaintiff's impairment met Listing 12.05C.**

Plaintiff alleges that the ALJ erred in this case because her impairment satisfied the requirements for Listing 12.05 found at 20 C.F.R. Part 404, Subpart P, Appendix 1.  That particular listing provides as follows:

> 12.05  Mental retardation:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

A.  Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

Or

B.  A valid verbal, performance, or full scale IQ of 59 or less;

Or

C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

Or

D.  A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

1.  Marked restriction of activities of daily living; or

2.  Marked difficulties in maintaining social functioning; or

3.  Marked difficulties in maintaining concentration, persistence, or pace; or

4.  Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1.  In the introduction to Listing 12.00 for Mental Disorders, 20 C.F.R. Part 404, Subpart P, Appendix 1, further provides that Listing 12.05 for Mental Retardation is different from the other listings.  In order to meet Listing 12.05, an individual's impairment must first satisfy the diagnostic description in 12.05's introductory paragraph and must then meet one of the four sets of criteria listed in sections A, B, C, and D.  *Id.*

In this case, Plaintiff found fault in the ALJ's conclusion that she did not meet subsection C of Listing 12.05 because she felt that there was medical evidence which demonstrated:  (1) a valid verbal performance or full-scale IQ score between 60 and 70; and (2) another physical impairment that imposes a significant work-related function.[2]

An examination of the medical evidence demonstrates that Dr. Davidson did report a Full Scale I.Q. score of 67, with Verbal and Performance I.Q. scores of 70 and 69, respectively.  These IQ scores did place her within the confines of section C.  However, the introduction to Listing 12.00 explains that standardized test scores are only part of the overall assessment of an individual's intelligence, and it is important to examine any reports that coincide with the test scores.  20 C.F.R Part 404, Subpart P, Appendix 1.  In this instance, Dr. Davidson's report that accompanied these test scores concluded that Plaintiff's results were under-representative of her true intellectual ability in light of her current behavior and prior testings.  (R. 164).  The ALJ noted this report and also noted Plaintiff's extensive work history, including times at which she was the sole cashier at a convenience store/gas station.  The ALJ also examined Plaintiff's activities of daily living and took note of the fact that she drives a car, operates a stove and oven, and helps her mother babysit.  The ALJ opined that this entire picture

---

[2]It does appear from an examination of the evidence that Plaintiff's reliance on subsection C is her only possible avenue for meeting Listing 12.05, as she does not have the requisite IQ scores or lack of functioning to meet subsections A or B, and she does not exhibit the level of marked limitations required by subsection D.

indicated that Plaintiff simply did not have the deficits in adaptive functioning required to satisfy Listing 12.05.

The ALJ was free to examine Dr. Davidson's report as well as Plaintiff's entire mental health picture and take into account her work history, her activities of daily living, and her prior testings, and reach the conclusion that Plaintiff's test scores were not indicative of her maximum intellectual ability. This was substantial evidence to support the ALJ's conclusion that Plaintiff did not meet the C criteria of Listing 12.05. There is, therefore, substantial evidence to support the ALJ's finding that Plaintiff's impairment did not meet or substantially equal Listing 12.05, as none of the four criteria listed in sections A, B, C, or D were met.

The court also notes that there is substantial medical evidence to support the conclusion that Plaintiff did not meet the diagnostic description in 12.05's introductory paragraph because she did not demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period . . . ." 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff's testings in the fourth, seventh, and tenth grades revealed IQ scores that did not place her in the category of mental retardation. In fact, Plaintiff's testing in the seventh grade simply revealed low-average intellectual functioning. Additionally, there is no evidence of deficits of adaptive functioning. The court's review of Plaintiff's mental health records prior to age 22 reveals that in the third grade, Plaintiff had an Adaptive Behavior

Quotient of 89.  (R. 206).  And, it was noted that "[i]nformation available through the adaptive behavior inventory indicates that Lisa is socially appropriate and able to interact positively with others."  (R. 207).  Hence, the ALJ's conclusion that Plaintiff did not meet Listing 12.05 is bolstered by the lack of medical evidence to support a finding that Plaintiff met the diagnostic description of mental retardation located in 12.05's introductory paragraph.

**Issue 2:  Whether the ALJ's credibility determination failed to comply with SSR 96-7p.**

Plaintiff next argues that the ALJ's assessment of her credibility failed to follow SSR 96-7p.  An ALJ's credibility determination will not be overturned unless it is "patently wrong."  *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000).  However, here the ALJ's "credibility" decision is not only an analysis of Plaintiff's credibility, but also an evaluation of Plaintiff's complaints of pain.  Therefore, the ALJ must not only consider SSR 96-7p, the regulation promulgated by the Commissioner to assess and report credibility issues, but also 20 C.F.R. § 404.1529(c)(3).

SSR 96-7p states that there is a two-step process that the ALJ engages in when determining an individual's credibility:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms.  The finding that an individual's impairment(s) could reasonably be expected to produce the individual's pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms.  If there is no medically

-16-

determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, *the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.  This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.*  This requirement for a finding on the credibility of the individual's statements about symptoms and their effects is reflected in 20 CFR 404.1529(c)(4) and 416.929(c)(4).  These provisions of the regulations provide that an individual's symptoms, including pain, will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record.

Social Security Ruling 96-7p (emphasis added; footnote omitted).  SSR 96-7p

further provides that the ALJ's decision regarding the claimant's credibility "must

contain specific reasons for the finding on credibility, supported by the evidence

in the case record, and must be sufficiently specific to make clear to the

individual and to any subsequent reviewers the weight the adjudicator gave to the

individual's statements and the reasons for that weight."  *Id.*

Moreover, 20 C.F.R. § 404.1529(c)(3) states that when a claimant's subjective individual symptoms, such as pain, are considered, several factors are relevant, including:  (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c)(3)(i)-(vii).

The ALJ provided a thorough, detailed analysis of Plaintiff's credibility in accordance with SSR 96-7p and 20 C.F.R. § 404.1529(c)(3).  (R. 22-25).  The ALJ examined Plaintiff's objective findings, activities of daily living, the locations, duration, frequency, and intensity of her pain, precipitating/aggravating factors, medications, treatment other than medication, and any other relevant factors. The ALJ specifically noted that Plaintiff's mother painted a completely different picture of Plaintiff's abilities than had Plaintiff and her sister at her administrative hearing, explaining that Plaintiff could cook, do laundry, drive to the destination she wants, concentrate on reading and television, and maintain relationships with others.  (R. 23).  The ALJ also noted that Plaintiff's allegations

of mental retardation and illiteracy were not credible given the fact that she could drive (which implied that she had passed a written driving test) and that she could work alone as the sole cashier at a convenient store. (R. 23). In addition, the ALJ observed that there was a lack of medical evidence to support Plaintiff's claims that she could not walk more than a block or lift more than a gallon of milk. (R. 25). Finally, the ALJ observed that Plaintiff only took over-the-counter medication for her pain, and she did not take any medication for her diabetes. (R. 25). There is, therefore, substantial evidence to support the ALJ's credibility determination, and it was not patently wrong.

Plaintiff argues that the ALJ failed to take into consideration Plaintiff's inability to pay for prescription medication. However, the court notes that Plaintiff's testimony at the administrative hearing was only that she was told by her sisters that she was not eligible for Medicaid. (R. 318). Plaintiff clearly has not provided adequate proof demonstrating that she has attempted to obtain financial assistance. Additionally, the court notes that the medical evidence does not reveal that Plaintiff's hospitalizations were diabetes related, so it is questionable whether Plaintiff needs medication to control her diabetes. And, Plaintiff testified that she takes over-the-counter medication for her pain, that it works for a short period of time, but that she only takes it every now and then. (R. 303). Given this evidence, the portion of the ALJ's credibility determination dealing with Plaintiff's use of medication at page 25 of the Record was not patently wrong.

**Issue 3:  Whether the ALJ conducted an improper RFC determination.**

Finally, Plaintiff argues that the ALJ's determination that Plaintiff retained the residual functional capacity for light work did not take into consideration all of her limitations.  Plaintiff argues that her RFC assessment failed to include "any of the limitations due to her significantly subaverage general intellectual functioning with deficits in adaptive functioning, her illiteracy, and her inability to stand for more than 30 minutes, or walk more than one block."  (Plaintiff's Brief in Support of Complaint to Review Decision of Social Security Administration at 28 (internal quotes omitted)).  However, as discussed above, there was a lack of objective medical evidence to support these mental and physical limitations.  The ALJ carefully examined all of Plaintiff's limitations.  She took into consideration Plaintiff's obesity and limited her to light work.  She took into consideration Plaintiff's borderline intellectual functioning and limited her to simple, repetitive tasks.  And, the ALJ took into consideration Plaintiff's diabetes and limited her to no work around machinery, heights, or in extreme temperatures.  Finally, the ALJ accommodated Plaintiff by limiting her to standing/walking only six hours in an eight-hour workday with the option to sit for 15 minutes after each hour; occasional climbing of stairs and ramps, balancing, stooping, kneeling, crouching and crawling; and no climbing of ladders/ropes/scaffolding.  All of these limitations were adequate given Plaintiff's mental and physical impairments, and the ALJ's assessment of Plaintiff's RFC was, therefore, supported by substantial evidence.

**VII.  Conclusion**

Substantial evidence supports the ALJ's determination.  Plaintiff did not meet Listing 12.05C, the ALJ's credibility determination was not patently wrong, and the ALJ's determination of Plaintiff's RFC was supported by substantial evidence.  Consequently, Plaintiff was not under a disability at the time of the ALJ's decision.  The final decision of the Commissioner is, therefore, **AFFIRMED**.

**SO ORDERED.**

**Dated:**  February 18, 2009

_____

WILLIAM G. HUSSMANN, JR.
Magistrate Judge

**Electronic copies to:**

Patrick Harold Mulvany
mulvany@onet.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov